■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EMMA PARKER, Respondent. — Order, Supreme Court, New York County (Leff, J.), dated June 17, 1980, granting motion pursuant to CPL 440.10 to permit defendant to withdraw her plea of guilty, and vacating the judgment of conviction thereon, is unanimously reversed, on the law and the facts; defendant's motion is denied, and the conviction is reinstated. Defendant was indicted for the crime of criminal possession of a weapon in the third degree, to wit, possession of a loaded pistol on December 22, 1974. On June 17, 1975, defendant pleaded guilty pursuant to a plea negotiation to the crime of attempted possession of a weapon in the third degree upon a promise of a statutory minimum sentence (as a second felony offender) of one and one-half to three years and a stay of execution pending appeal. This promise was performed by the court (Mr. Justice Greenfield). Defendant's appeal to this court resulted in a unanimous affirmance on January 30, 1978 (60 AD2d 831). On February 23, 1978, leave to appeal to the Court of Appeals was denied by a Judge of the Court of Appeals (43 NY2d 962). On March 15, 1978, defendant moved at Trial Term, pursuant to CPL 440.10, for withdrawal of her plea of guilty. After a hearing, Mr. Justice Leff granted the motion and vacated the judgment of conviction. The People appeal from that determination. Trial Term's grant of the motion was based essentially on a finding that defendant's plea of guilty was the product of duress. We cannot agree. We recognize that the defendant was under very great pressure in entering her plea. She did not wish to risk a conviction after trial of the crime of criminal possession of a weapon in the third degree, a class D felony, with a possible maximum sentence of up to seven years (Penal Law, § 265.02, subd [4]), a risk which was not alleviated by the fact that she had been previously convicted of the felony of manslaughter and had served a prison term in connection therewith. Nor did she wish to take her chances on whether, after such a conviction, bail would be granted to her pending appeal. But these are the pressures that any defendant is under in entering into a negotiated plea. The pressures on her were somewhat more intense in the present case because defendant was a woman with small children. Her contention was that she was only holding the gun for her husband, who at the last minute refused to come to her assistance. But all these factors were fully discussed with her attorney. Indeed her attorney apparently advised her not to plead guilty. With full knowledge of all the circumstances she determined not to take the risk and entered the plea. Nothing in these factors constitutes duress justifying the vacatur of a plea of guilty. As the Court of Appeals said: "We have never recognized 'coercion' by family members as a reason for withdrawing a guilty plea." (*People v Lewis*, 46 NY2d 825, 826.) During the course of the plea discussions, defendant's attorney stated to Justice Greenfield that he planned to try the case on the theory of innocent possession and "jury nullification", i.e., as Justice Greenfield testified, "he would argue to the Jury that no matter what the law might be and no matter what the facts might be which would indicate the guilt of Mrs. Parker he would urge upon them that they should ignore what he considered to be an unjust law and ask the Jury to return a verdict of not guilty in the face of the facts." Justice Greenfield could have said nothing at this point and let the defendant take her chances. Instead Justice Greenfield frankly stated to defendant's attorney (a) that he would not permit a defense of "jury nullification" as this was contrary to the law of New York, and (b) that he thought that on the facts of the case as they then appeared from the suppression hearing (in some respects different from the

facts as they are now portrayed), once it became clear that the husband was not going to come in to testify, "there would be little chance for success" on the claim of innocent possession. He emphatically denied that he ever said that he would prevent the defendant from asserting the defense of innocent possession or that he would refuse to charge the jury on that defense should it be asserted. Justice Leff, of course, did not reject Justice Greenfield's testimony. We accept the testimony, particularly as it is consistent with the position that any experienced Judge would take as to his charge on these defenses. Thus, all we have as to official "duress" is an accurate and honest statement by the court as to what would probably happen on the trial. At the time of the plea negotiations, Justice Greenfield refused to commit himself as to what he would do if the case went to verdict and resulted in a conviction. Again this was perfectly proper. When there is a conviction after trial, there is no agreement, and there is no occasion for the court to make any sentence commitment. The court, after all, must leave itself free to render a decision that is appropriate on the facts as they may later appear, and not have to say to one side or the other that it cannot accept a particular argument because it had promised the other side not to. We note further that the defense of innocent possession is precisely one of the defenses which defendant clearly and intentionally foreclosed by her plea of guilty. Justice Leff was clearly moved by defendant's plight. We note that Justice Greenfield, the sentencing Judge, took a somewhat different view, stating that the court had some doubt as to whether in fact the crime was mitigated; that defendant had had seven prior arrests and convictions, most for larceny, two of which involved assaults with a knife, and one a charge of manslaughter in the first degree by shooting the victim with a loaded revolver; and that at the time defendant was apprehended, according to the testimony of the police officer, she was having a heated argument with her husband. It is not for us to resolve these differing views as to mitigation. Defendant has received the minimum sentence which the laws of the State of New York permit for her crime. It is not for the courts to state that the statute shall not be applied in her case. It is now seven years since defendant was apprehended in possession of a loaded pistol and over six years since she pleaded guilty and was sentenced to the agreed-upon minimum sentence of imprisonment. In the meantime, the sentence has been stayed. Such an inordinate delay between sentence and execution removes almost all the point of a criminal prosecution. But this lapse of time was largely due to the pursuit of successive and, as it turned out, legally unfounded attacks by way of appeals and postconviction motions upon a valid judgment of the Supreme Court. (The postconviction motion was as available to defendant the day after her conviction as it was when she made it two and one-half years later.) We cannot recognize this lapse of time as a legitimate and effective nullification of a valid judgment. Concur — Kupferman, J. P., Carro, Lupiano, Silverman and Lynch, JJ.